NOT FOR PUBLICATION                                                    [8]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                           :
CHARLES DISCENZA,                          :
                                           :
                    Plaintiff,             :
                                           :          Civil No. 05-2660 (FLW)
          v.                               :
                                           :                **OPINION**
GORDON R. ENGLAND,                         :
SECRETARY OF THE NAVY                      :
                                           :
                    Defendant.             :
_____:


**<u>WOLFSON, District Judge</u>**


        Presently before the Court is a Motion for Summary Judgment and to Dismiss Plaintiff's

Complaint by Defendant[1], Gordon R. England.  In the Complaint, Plaintiff, Charles Discenza

("Discenza"), sets forth numerous causes of action relating to his employment and subsequent

termination from a job as a G-12 contract specialist at the Naval Air Warfare Center, Department

of the Navy, in Lakehurst, New Jersey.  Specifically, Plaintiff sets forth claims for

Discrimination and Hostile Work Environment under Title VII, Retaliation, Violation of the

Rehabilitation Act and Age Discrimination in violation of the Age Discrimination in

_____

        [1]Although Defendant titled his motion as a Motion for Dismissal and for Summary
Judgment, the Court understands Defendant to be moving for a Dismissal or, in the alternative,
for Summary Judgment.  For the reasons discussed below, the Court will construe the instant
motion as a Motion for Summary Judgment and decide it accordingly.

Employment Act ("ADEA"). The Court has considered the moving, opposition and reply papers and for the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff, Discenza, was employed as a GS-12 contract specialist at the Naval Warfare Center in Lakehurst, New Jersey for approximately 22 years[2]. Def's Statement of Uncontested Facts ("Def's Fact. St.") ¶ 1. On May 15, 2003, Discenza's supervisor, Barbara Petrzilka ("Petrzilka"), notified Plaintiff that she had submitted a formal proposal to remove Plaintiff from federal service for failing to properly process a solicitation that resulted in nine unauthorized disclosures of information protected under the Arms Export Control Act ("AECA"). Id. ¶¶ 2 & 3.

On April 29, 2003, however, prior to receiving notice of removal, Plaintiff contacted an EEO counselor to complain that his Weingarten rights had been violated. On June 2, 2003, Plaintiff contacted a union official and filed the National Association of Government Employees ("NAGE") Local Complaint Form alleging that the May 15, 2003 notice of termination violated his Weingarten rights, that he had been retaliated against for prior EEO filings and that he had been treated differently than other employees. Id. ¶ 7. Subsequently, on June 13, 2003[3], the

---

[2]Importantly, the Court notes that Plaintiff has not contested Defendant's Statement of Facts and, with one exception, does not include an independent Statement of Facts; thus, apart from the afore-mentioned exception, all citations will refer to Defendant's Statement of Facts.

[3]The Court notes that although Defendant's Statement of Facts provides that the "union filed a formal step one grievance on July 13, 2003", the actual grievance, attached as Defendant's

union filed a Negotiated Grievance Procedure – Step 1– which included allegations of retaliatory harassment and harassment based upon Discenza's disability.  Id. ¶¶ 9-11.  At some later date[4], Plaintiff filed another letter with an EEO counselor alleging that he discovered violations of the union agreement on June 2, 2003 and indicating that both actions on February 3, 2003 and May 15, 2003 were done in retaliation for filing EEO complaints and union activity.  Id. ¶ 8.

Thereafter, on June 30, 2003, Discenza was advised that his employment would be terminated, effective July 2, 2003.  Id. ¶ 5. On July 3, 2003, Plaintiff filed an appeal of his termination to the Merit Systems Protection ("MSP") Board alleging unlawful discrimination on the basis of a physical disability.  Id. ¶¶ 12-13.  On October 27, 2003, Administrative Law Judge Michael H. Garrety held a hearing on Plaintiff's appeal at which time   Discenza withdrew his affirmative defense of disability discrimination.  Donnelly Cert., ex. 6, at 2.  Following the hearing, in a decision dated January 12, 2004,  Judge Garrety affirmed the agency's action and found that Plaintiff had failed to establish a prima facie case of retaliation. Id.

Thereafter, Plaintiff appealed the ALJ's decision to the MSP Board and, in a decision dated October 15, 2004, the Board affirmed the ALJ's decision.  The October 15, 2004 denial of review became the final decision of the MSP  Board.   In addition, the Board explained that Discenza could seek review of his discrimination claims at the EEOC within 30 days or by filing suit in the United States District Court within 30 days.  However, the Board explained that if

---

Exhibit 4 indicates that the grievance was dated June 13, 2003 and indicated that it was signed by the Plaintiff on June 2, 2003.  Thus, the Court will use the date from the agreement and not the date indicated by the Defendant.

[4]According to the Defendant's Statement of Facts, the letter was dated May 27, 2003, however the letter must have been amended and filed later because it referenced events occurring on June 2, 2003.

Discenza did not want to request a review of the final decision of the discrimination claims, but did want to request review of the decision without regard to the discrimination claims, he could request a review by the United States Court of Appeals for the Federal Circuit within 60 days.

On December 14, 2004, Discenza filed an appeal to the Federal Circuit Court of Appeals stating that "[n]o claim of discrimination. . .has been or will be made in this case. A discrimination case in the same matter has not been filed in the United States District Court or the Equal Employment Opportunity Commission."  Donnelly Cert., ex. 12.  Thereafter, on January 9, 2006, the Federal Circuit affirmed the ALJ's decision.

In addition, on November 19, 2003, after Plaintiff filed with the MSP Board but before the Board had issued a decision, Plaintiff filed a formal complaint with the Navy's EEO office alleging discrimination on the basis of sex, disability and age.  Donnelly Cert., ex. 10.  On January 7, 2004, the EEO office dismissed Discenza's formal complaint finding that it was barred pursuant to 29 C.F.R. § 1614.301 because Plaintiff had initially filed grievances under the Negotiated Grievance Procedure on June 13, 2003 and on June 16, 2003 on the same issues as those contained in the November 19, 2003 complaint.  Id.

Thereafter, Discenza filed an appeal with the EEOC challenging the Navy's dismissal of his discrimination complaint.  In a decision dated February 15, 2005, the EEOC affirmed the Navy's dismissal of Discenza's Complaint.  Id., ex. 11.  Specifically, the EEOC found that the agency had properly dismissed Plaintiff's complaint because he had filed an earlier appeal with the MSP Board on July 3, 2003 prior to filing his EEO complaint on November 19, 2003.  Moreover, the EEOC found that the "matters contained in the instant complaint concern the same matters contained within the MSPB claim.  Contrary to complainant's argument on appeal, the

4

record reveals that the MSPB addressed the merits of complainant's discrimination claims and upheld the agency's actions."  Donnelly Cert., ex. 11 at 2.

Thereafter, on May 20, 2005, Plaintiff filed the instant complaint in the United States District Court for New Jersey alleging Discrimination and Hostile Work Environment under Title VII, Retaliation, Violation of the Rehabilitation Act and Age Discrimination.

## II. LEGAL STANDARD

When a party styles its motion as a motion to dismiss, or in the alternative, for summary judgment under Rule 56, and attaches material outside the pleadings to its motion papers, a court "has the discretion to accept the extraneous material and convert the motion into one for summary judgment." Gunson v. James, 364 F.Supp.2d 455, 460-61 (D.N.J.2005); see also Fed.R.Civ.P. 12(b). However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a motion for summary judgment. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (emphasis omitted).  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). Consideration of these referenced documents will not require the conversion of a motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(b)(6).  Any further expansion beyond the pleading, however,

may require conversion of the motion into one for summary judgment. Fed. R. Civ. P. 12(b). "The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." Id. at 1196-97.  Even if a "[c]omplaint does not explicitly refer to or cite [a document]. . . the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." Burlington Coat, 114 F.3d at 1426 (emphasis in original) (citation omitted).

In the instant matter, Defendant attaches numerous exhibits to his motion including copies of documents from the MSP Board, the Federal Circuit public records and the Department of Navy's EEO Process as well as documents maintained by the Navy that relate to Plaintiff's removal; these documents are critical to the issues presented in this case.  Moreover, Defendant framed his motion as a Motion to Dismiss and for Summary Judgment.  Thus, Plaintiff was on notice that this Court could convert the instant Motion to Dismiss into a Motion for Summary Judgment.  See Koger v. Kaplan, Inc., 169 Fed.Appx. 682, 685 (3d Cir. 2006)(holding that "the District Court committed no reversible error in considering evidence outside of the pleadings as the District Court only did so in the context of consideration of a motion for summary judgment and only after the parties had been notified of the conversion-a clearly permissible course of action."); Carver v. Plyer, 115 Fed.Appx. 532, 536-37 (3d Cir. 2004) ("motions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary

judgment.").  For these reasons,  the Court will consider Defendant's Motion to Dismiss as a

Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

      A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir.2000). In deciding whether summary judgment should be granted, the

Court considers "pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the

light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d

Cir.2002).  The Court's function "at the summary judgment stage. . .is not. . .to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  To successfully defend

against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported

allegations of the complaint, and must present more than the "mere existence of a scintilla of

evidence" in his favor. Id., 477 U.S. at 252.


## III. DISCUSSION

### 1. Plaintiff's Proposed Removal

      As discussed above, prior to his termination, Plaintiff was a federal, civilian employee of

the Department of the Navy. On May 15, 2003, Plaintiff was notified that his supervisor had

proposed that he be removed from his position as a  GS-12 contract specialist at the Naval

Warfare Center.  Thereafter, on June 2, 2003, Plaintiff filed a NAGE local Complaint form

alleging that the May 15, 2003 notice of termination violated his Weingarten rights, that he had been retaliated against for prior EEO filings and that he had been treated differently than other employees. On June 13, 2003, the union filed a Negotiated Grievance Procedure – Step One – on Plaintiff's behalf; this grievance included allegations of retaliatory harassment and harassment based upon Plaintiff's disability.  In light of these events, Defendant argues that because Plaintiff initially chose to present a Negotiated Grievance Procedure to raise claims of retaliation, hostile work environment and discrimination relating to his proposed termination, he is barred from presenting this Complaint in Federal Court.  The Court agrees.

 Section 1614 of the Code of Federal Regulations ("C.F.R.") applies to civilian federal employees in military departments and encompasses the processing of complaints that allege discrimination in whole or in part.  29 C.F.R. § 1614.103.   Moreover, 29 C.F.R.  § 1614.301 sets forth the relationship between complaints alleging discrimination and the negotiated grievance procedure; specifically, section 1614.301 provides:

> When a person is employed by an agency subject to 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both. An election to proceed under this part is indicated only by the filing of a written complaint; use of the pre-complaint process as described in § 1614.105 does not constitute an election for purposes of this section. An aggrieved employee who files a complaint under this part may not thereafter file a grievance on the same matter. An election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance. An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination. Any such complaint filed after a grievance has been filed on the same matter shall

be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision as provided in subpart D of this part. The dismissal of such a complaint shall advise the complainant of the obligation to raise discrimination in the grievance process and of the right to appeal the final grievance decision to the Commission.

Id. (emphasis added).  In other words, a complainant has two options pursuant to which he can present a grievance; however, a complainant may only use one of the options and the election occurs when a complainant files a grievance or files a formal EEO complaint, whichever is done first.  See, e.g., Wright v. Snow, 2006 WL 1663490 at *6-7 (D.D.C., June 14, 2006)(noting that the filing of a union grievance amounts to an "irrevocable election of remedies" resulting in a mandatory dismissal of subsequent administrative complaints).

In the instant matter, Plaintiff initially elected to use the negotiated grievance procedure to contest his proposed termination. Indeed, Plaintiff filed a NAGE Local Complaint on June 2, 2003 which sets forth, in part, Plaintiff's claims of retaliation, discriminatory treatment and hostile work environment.  For example, paragraphs 7, 8, 9, 10, and 11 of the June 2, 2003 Complaint allege that his supervisor took various adverse actions against him in "retaliation" for actions that he took.  Donnelly Cert., Ex. 3 at ¶¶ 7-11.  Further, the NAGE complaint form noted, in part, that:

> (12) A least two other people have done the same or similar 'error' and were not disciplined or fired. People who forged contract documents, stole a large amount of material and/or forged time cards were not fired but allowed to 'retire' or transfer to other activities. . .(15) Ms. Petrzilka created a great embarassment for the Complainant in that she publicly humiliated him by allowing a search of his personal property and removing him from the bldg. and base during working hours."

Id. at ¶¶12 & 15.

    In addition to Plaintiff's filing of a NAGE Local Complaint, the union filed a Negotiated

Grievance Procedure – Step 1 – on June 13, 2003 that provided further details surrounding

Plaintiff's claims.  Specifically, Plaintiff contends that "Petrzilka. . .used 'punishment' as a form

of retaliation for filing EEO complaints. Thereby causing fear among the 'older' employees."

Donnelly Cert., ex 4, ¶9.  Paragraph 10 alleges that Petrzilka attempted to fire Plaintiff without

just cause in violation of the Union Agreement and that this action was in retaliation for filing

EEO complaints.  Similarly, in paragraph 11, Plaintiff notes that his termination occurred after

the start of the EEOC investigations and that this was in retaliation for the investigations.  In

addition, paragraph 13 alleges discrimination and harassment because Plaintiff was a Union

member and paragraph 16 contends that Petrzilka "created a 'Hostile Working Environment'"

and discriminated against Plaintiff because "at least two other contract specialists made the same

or worse type of error and were not even disciplined let alone fired. I believe that is a double

standard. . .Ms. Petrzilka knew or should have known that due to my medical condition (I am a

disabled Veteran whose condition became life threatening in January 2003) . . . I was to avoid

stress." Id. ¶ 13 & 16.

    Based on Plaintiff's decision to initially pursue the negotiated grievance procedure and to

include claims of retaliation, discrimination and hostile work environment in the grievance, I find

that Plaintiff cannot bring the instant complaint in this Court.  Indeed, despite Plaintiff's

argument that the record does not indicate that this procedure was followed beyond Step 1,

according to the section 1614.301, "[a]n election to proceed under a negotiated grievance

procedure is indicated by the filing of a timely written grievance."  Id.  Indeed, in Wright v.

Snow, the court held that "initiation of the negotiated grievance procedure is an 'irrevocable election of remedies,' regardless of whether the complainant ever takes any action after the initial step of filing the administrative complaint." 2006 WL 1663490, at *6; see also Collins v. Snow, 2005 WL 1342979, at *5 (E.D.Mich. June 2, 2005). Plaintiff's complaint of June 2, 2003 and the union's Step One Grievance clearly satisfy this requirement.  Thus, Plaintiff is barred from raising these claims in any other forum including this Court.

2. **Plaintiff's Termination**

On July 3, 2003, Plaintiff filed an appeal of his termination to the MSP Board.  In the appeal, Plaintiff alleged unlawful discrimination on the basis of disability.  Indeed, as discussed above, Plaintiff pursued this avenue of relief up to the Federal Circuit Court of Appeals.  In light of these events, Defendant argues that because Plaintiff brought a mixed case proceeding before the MSP Board, he was required to articulate his discrimination claims in that forum.  Thus, Defendant contends that Plaintiff's failure to bring those claims in that forum and his decision to appeal to the Federal Circuit Court of Appeals bar his claims from being heard in this Court. The Court agrees.

A federal employee who suffers an adverse personnel action and also alleges discrimination in violation of Title VII, presents a "mixed case." See Valentine-Johnson v. Roche, 386 F.3d 800, 805 (6th Cir.2004). Pursuant to 29 C.F.R. § 1614.302(b), the employee has two options: he can file either a mixed case complaint with her agency's EEO office or a mixed case appeal directly to the MSPB, "but not both." Section 1614.302(b) further states that "whichever is filed first [a formal administrative mixed case complaint with the EEO or a mixed

case appeal with the MSPB] shall be considered an election to proceed in that forum." Id.  Thus, an aggrieved employee's initial choice of how to proceed affects how the claims are processed; indeed, the initial choice constitutes an election to proceed that precludes other avenues of relief.

In the instant matter, Plaintiff filed an appeal of his termination with the MSPB on July 3, 2003.  Donnelly Cert., ex. 5.  Plaintiff's appeal included claims of disability discrimination and retaliation.  On January 12, 2004, Administrative Law Judge Garrety issued a decision upholding the Navy's decision to terminate Plaintiff finding that there was no retaliation against Plaintiff and noting that Plaintiff had withdrawn his claim of disability discrimination at a pre-hearing conference.  Donnelly Cert., ex. 6.

Subsequently, Plaintiff filed a petition for review by the entire board.  On October 15, 2004, the MSP Board of appeals issued a final order upholding Discenza's termination.  In addition, the MSP Board order informed Discenza that he had three options for appeal: (1) he could seek EEOC review of his discrimination claims pursuant to 5 U.S.C. § 7702(b)(1); (2) he could file a civil action in federal district court on both his discrimination and his termination claims under 5 U.S.C. § 7703(b)(2); or (3) he could request the United States Court of Appeals for the Federal Circuit to review the termination decision, but he could only pursue this avenue if he did not seek review of his discrimination claims, because the Federal Circuit does not have jurisdiction to hear discrimination appeals. See 5 U.S.C. § 7703(b)(1)-(2).  Thus, according to the statutory scheme governing review of MSPB final orders, if a federal employee wants to pursue any type of discrimination claim on appeal, the employee must file a complaint in a federal district court, as the federal district court is the only forum in which an employee can appeal both parts of a mixed claim.

In the instant matter, Plaintiff chose to appeal his non-discrimination claims with the Federal Circuit Court of Appeals.  Indeed, in his appeal to the Federal Circuit, Plaintiff completed and filed a statement entitled "Petitioner's Statement Concerning Discrimination" explicitly stating that "[n]o claim of discrimination by reason of race, sex, age, national origin or handicapped condition has been or will be made in this case. A discrimination case in the same matter has not been filed in the United States District Court or the Equal Employment Opportunity Commission."   Donnelly Cert., ex. 12.  Numerous courts have held that a statement disavowing a discrimination claim constitutes "a valid waiver of his right to proceed in U.S. District Court." See, e.g., Otiji v. Heyman, 47 F.Supp.2d 6, 7 (D.D.C. 1998).  Indeed, had Plaintiff refused to waive his discrimination claims, he could have filed in a district court with the power to hear the EEO claims; however, Plaintiff did not choose this path and, instead, filed in the Federal Circuit.  For these reasons, I find that Plaintiff waived his ability to pursue the discrimination claims he raised before the MSPB and other discrimination claims arising from the same facts.  See Pinson v. Rumsfeld, 192 Fed.Appx. 811, 816 (11th Cir., May 18, 2006); Chappell v. Chao, 388 F.3d 1373, 1378 (11th Cir. 2004).


## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED. An appropriate order will follow.


Dated: January 17, 2007_____          /s/ Freda L. Wolfson_____
                                                              Honorable Freda L. Wolfson
                                                              United States District Judge

13

14